MICHAEL J. MCCUE (SBN: 296425)
Email:  MMcCue@LRRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
(702) 949-8200 (Tel.)
(702) 949-8398 (Fax)

AARON D. JOHNSON (SBN: 261747)
Email:  ADJohnson@LRRLaw.com
4300 Bohannon Drive, Suite 230
Melo Park, California 94025
(650) 391-1380 (Tel.)
(650) 391-1395 (Fax)

*Attorneys for Defendants Bellagio LLC
and MGM Resorts International*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORREST KOLB; JINYONG NA; LYNE RENEE; JONATHAN FRITZ; and APRIL HUTCHINGS,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BELLAGIO LLC, a Nevada Limited Liability Company; MGM RESORTS INTERNATIONAL, a Delaware Corporation and DOES 1-50, inclusive,<br><br>        Defendants. | Case No.:   2:15−cv−08512 SVW(JPRx)<br><br>**DEFENDANTS BELLAGIO, LLC AND MGM RESORTS INTERNATIONAL'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: January 25, 2016<br>Time: 1:30 p.m.<br>Courtroom: 6<br>Compl. Filed: October 1, 2015<br>First Am. Comp. Filed: October 6, 2015<br><br>**Honorable Judge Stephen V. Wilson** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on January 25, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the above Court located at 312 North Spring Street, Los Angeles, CA 90012, before the Honorable

*(sidebar)* LEWIS ROCA ROTHGERBER — 3993 Howard Hughes Parkway, Suite 600, Las Vegas, NV 89169-5996

Judge Stephen V. Wilson, Defendants Bellagio, LLC and MGM Resorts International will and hereby do respectfully move this Honorable Court to dismiss this action for lack of personal jurisdiction and based on the first-to-file rule.

This motion is supported by the accompanying Declaration of Michael J. McCue (the "McCue Decl."), the Declaration of April Chaparian (the "Chaparian Decl."), as well as the exhibits attached thereto, the following memorandum of points and authorities, and any oral argument that the Court may entertain. This motion is made following the conferences of counsel on November 2, 2015 and December 7, 2015. L.R. 7-3.

Dated: December 14, 2015       Respectfully submitted,

LEWIS ROCA ROTHGERBER LLP

By: /s/ Michael J. McCue

MICHAEL J. MCCUE (SBN: 296425)
Email: MMcCue@LRRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
(702) 949-8200 (Tel.)
(702) 949-8398 (Fax)
AARON D. JOHNSON (SBN: 261747)
Email: ADJohnson@LRRLaw.com
4300 Bohannon Drive, Suite 230
Melo Park, California 94025
(650) 391-1380 (Tel.)
(650) 391-1395 (Fax)

*Attorneys for Defendants Bellagio LLC and MGM Resorts International*

LEWIS ROCA ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    Bellagio Retained A Photographer Who Contracted with Plaintiffs....................... 2

    B.    The Kolb Parties' Demand Letter ................................................................ 3

    C.    Bellagio Agreed to Mediate The Dispute ................................................... 3

    D.    Bellagio Asked For Relevant Contracts and Licenses, To Which The Kolb Parties Indicated They Would Provide ........................................... 4

    E.    A Week Before Mediation, Bellagio Learned The Kolb Parties Did Not Have Critical, Relevant Documents ............................................... 5

    F.    The Kolb Parties Admitted They Did Not Have Relevant Documents and Refused to Postpone Mediation ............................................................ 7

    G.    Bellagio Filed the Nevada Action ............................................................... 8

    H.    Kolb Parties Filed the California Action ..................................................... 9

    I.    The Kolb Parties Intend to Move to Dismiss in the Nevada Action ......................... 9

    J.    The Kolb Parties Did Not Consent To Dismiss This Case ....................... 9

ARGUMENT .............................................................................................................. 10

I.    THE COURT SHOULD DISMISS THIS CASE FOR LACK OF PERSONAL JURISDICTION OVER BELLAGIO AND MGM ............................. 10

    A.    There Is No General Jurisdiction over Bellagio or MGM ....................... 10

    B.    There Is No Specific Jurisdiction over Bellagio or MGM ....................... 13

II.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE CALIFORNIA ACTION BASED ON THE FIRST-TO-FILE RULE ......................... 16

    A.    The First-to-File Rule is Clearly Satisfied ............................................... 16

    B.    The Exceptions to the First-to-File Rule do not Apply ........................... 17

*LEWIS ROCA ROTHGERBER*

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

1

1. The Nevada Action was not filed in bad faith as an anticipatory suit ........... 17

CONCLUSION ................................................................................................................. 22

CERTIFICATE OF SERVICE ....................................................................................... 23

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

LEWIS ROCA
ROTHGERBER

# **TABLE OF AUTHORITIES**

**Cases**

*Alltrade, Inc. v. Uniweld Products, Inc.*,
 946 F.2d 622 (9th Cir. 1991).................................................................................16, 17

*Bixby v. KBR, Inc.*,
 603 F. App'x 605 (9th Cir. 2015) ...............................................................................15

*Browne v. McCain*,
 612 F. Supp. 2d 1118 (C.D. Cal. 2009).................................................................13, 14

*Bryant v. Oxxford Express, Inc.*,
 181 F.Supp.2d 1045 (C.D. Cal. 2000).........................................................................19

*Burger King Corp. v. Rudzewicz*,
 105 S. Ct. 2174 (1985) ...............................................................................................16

*CollegeSource, Inc. v. AcademyOne, Inc.*,
 653 F.3d 1066 (9th Cir. 2011)........................................................................11, 12, 13

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) .......................................................................................10, 11, 12

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
 557 F.2d 1280 (9th Cir. 1977).....................................................................................15

*Gerritsen v. Warner Bros. Entm't Inc.*,
 No. CV 14–03305 MMM (CWx), 2015 WL 4069617 (C.D. Cal. Jan. 30, 2015) .......16

*Guthy–Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
 179 F.R.D. 264 (C.D. Cal. 1998)...........................................................................17, 19

*Hernandez v. City of Beaumont*,
 No. EDCV 13–00967 DDP (DTBx), 2014 WL 6943881 (C.D. Cal. Dec. 8, 2014) ......16

*Imageline, Inc. v. CafePress.com, Inc.*,
 No. CV 10–9794 PSG (MANx), 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011)..............15

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,
 880 F. Supp. 743 (C.D. Cal. 1995)...............................................................................10

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*,
 No. C–07–3983, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007)....................................12

*Lake v. Lake*,
 817 F.2d 1416 (9th Cir. 1987)......................................................................................13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
 647 F.3d 1218 (9th Cir. 2011).....................................................................................10

*PETA, Inc. v. Beyond the Frame, Ltd.*,
 No. CV 10–07576 MMM (SSx), 2011 WL 686158 (C.D. Cal. Feb. 16, 2011).............17

*Ranza v. Nike, Inc.*,
 793 F.3d 1059 (9th Cir. 2015).....................................................................................11

*Rowland v. Paris Las Vegas*,
 No. 3:13–cv–02630–GPC–DHB, 2014 WL 3867528 (S.D. Cal. Aug. 6, 2014)...........12

*Royal Queentex Enters. v. Sara Lee Corp.*,
 No. C–99–4787 MJJ, 2000 WL 246599 (N.D. Cal., Mar. 1, 2000)..............18, 19, 20, 21

*Sherwin-Williams Co. v. Holmes Cnty.*,
 343 F.3d 383 (5th Cir. 2003).......................................................................................20

*Shizzle Pop, LLC v. Wham–O, Inc.*,
 No. CV 10–3491, 2010 WL 3063066 (C.D. Cal. Aug. 2, 2010)...................................17

Shute v. Carnival Cruise Lines,
 897 F.2d 377 (9th Cir. 1990)........................................................................................12

*TIG Ins. Co. v. Dillard's Inc.*,
 132 F. Supp. 2d 1277 (D. Nev. 2001) ..........................................................................19

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014) ................................................................................10, 13, 14, 15

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

Washington Shoe Co. v. A–Z Sporting Goods Inc.,
    704 F.3d 668 (9th Cir. 2012)...............................................................................10, 13
World–Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)..........................................................................................10
*Xoxide, Inc. v. Ford Motor Co.*,
    448 F. Supp. 2d 1188 (C.D. Cal. 2006)............................................................17, 20
*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
    218 F.R.D. 663 (N.D. Cal. 2003) ...................................................................18, 20

**Other Authorities**
Cal. Civ. Proc. Code § 410.10.................................................................................10
Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1238 (3d ed.) .............20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Defendants MGM Resorts International ("MGM") and Bellagio, LLC ("Bellagio") hereby move to dismiss this action for lack of personal jurisdiction. Alternatively, the Court should dismiss this case ("California Action") in light of the first-filed action involving the same parties and same issues in the United States District Court for the District of Nevada, Case No. 2:15-cv-01879-GMN-PAL ("Nevada Action").

Plaintiffs Forrest Kolb, Jinyong Na, Lyne Renee, Jonathan Fritz, and April Hutchings ("Kolb Parties") were professional models who were hired by a photographer (or his agent) to participate in a photo shoot at the Bellagio Hotel and Casino in Las Vegas in 2009. On information and belief, they were paid approximately $3,000 each for a 5-year license to use their images in advertising and promotional materials.  In July 2015, the Kolb Parties accused the Bellagio of using the images beyond the term of the license. The parties agreed to mediate the dispute, including exchanging of certain information and documents.  However, after an impasse in the mediation process and after the Kolb Parties revealed that they were demanding an extraordinary amount to settle the dispute, on September 30, 2015, Bellagio filed the Nevada Action against the Kolb Parties.  After the Kolb Parties were informed of the Nevada Action, they filed the California Action in the Superior Court of California in the County of Los Angeles.  Bellagio and MGM timely removed the California Action to this Court.

The Court should dismiss this action for lack of personal jurisdiction.  The Court does not have general jurisdiction over MGM or Bellagio, because they have no substantial, continuous or systematic contact in California to consider them "essentially at home" in California.  Additionally, the Court does not have  specific jurisdiction because MGM and Bellagio did not engage in conduct aimed at persons

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

that MGM and Bellagio knew resided in California and the claims do not arise out of MGM's or the Bellagio's contacts with California.

The Court should also dismiss this action based on the first-to-file rule. The Nevada Action was not an anticipatory action that warrants applying an exception to the rule that the case should proceed in the forum in which it was first filed. Bellagio filed suit in Nevada because the parties reached an impasse in the mediation process, not in anticipation of an imminent threat of suit by the Kolb Parties in California.

## STATEMENT OF FACTS

### A. *Bellagio Retained A Photographer Who Contracted with Plaintiffs*

Upon information and belief, in 2008, Bellagio contracted with a photography company, Tomas Muscionico, Inc., to take photos to be used in the promotion of the Bellagio hotel and casino. (Chaparian Decl. ¶4.)  Upon information and belief, Mr. Muscionico or photographer named Gayle Jones contacted a modeling agency, Wilhelmina Models, to provide models for the photographs. (Chaparian Decl. ¶ 5.) Upon information and belief, neither MGM nor Bellagio selected the modeling agency or the models, or had any contracted or other business dealings with the models. (Chaparian Decl. ¶ 6.)

Upon information and belief, Wilhemina Models provided five professional models, Forrest Kolb, Jinyong Na, Lyne Renee, Jonathan Fritz, and April Hutchings (the "Kolb Parties"). (Chaparian Decl. ¶ 7.)  Upon information and belief, in or around December 2009, the Kolb Parties flew to Las Vegas to participate in Mr. Muscionico or Ms. Jones' photo shoot at the Bellagio hotel and casino. (Chaparian Decl. ¶ 8.)  Upon information and belief, they were paid approximately $3,000 each for a 5-year license to use their images in advertising and promotional materials. (Chaparian Decl. ¶ 9.) Upon information and belief, neither MGM nor Bellagio directly negotiated the licenses or had knowledge of the residence of any of the Kolb

Parties, until after the dispute arose with the Kolb Parties in 2015.  (Chaparian Decl. ¶ 10.)

### B.   The Kolb Parties' Demand Letter

On July 22, 2015, Mr. Bassil Hamideh, counsel for the Kolb Parties, sent MGM Resorts International's CEO a demand letter contending that Bellagio had violated the Kolb Parties' rights of publicity by using their images on Bellagio's website and hotel-related brochures.  The letter did not identify the terms of the license, including the scope, the duration or the termination date.  (Chaparian Decl. ¶ 11 and Ex. A.)

### C.   Bellagio Agreed to Mediate The Dispute

On or around August 11, 2015, Bellagio's outside counsel, Michael J. McCue, called Mr. Hamideh and left a message to discuss the demand letter .  (*See* McCue Decl. Ex. A, August 1, 2015 email from Mr. Hamideh to Michael J. McCue.)  On August 12, 2015, Mr. McCue spoke with Mr. Hamideh by phone.  (McCue Decl. ¶ 4.)  Mr. Hamideh proposed mediating the dispute.  (*Id.*)  Mr. McCue indicated that he was new to the case, the needed to figure out the facts, the Bellagio did not have several documents that were directly relevant to liability, that the Bellagio needed additional information and documents to be able determine liability and explore settlement. (*Id.*) Mr. Hamideh claimed that there was no issue as to liability.  (*Id.*)  When Mr. McCue asked Mr. Hamideh questions about the facts relating to alleged liability,  Mr. Hamideh said that he "did not want to show his hand." (*Id.*)  Mr. Hamideh and Mr. McCue discussed the possibility of mediation and Mr. McCue said that for mediation to be successful and meaningful, the parties must agree to exchange relevant documents and information.  (*Id.*)  Contrary to Mr. Hamideh's contention, at no point during the call (or at any time) did Mr. McCue say anything akin to "it looks like you have liability and there are damages.  Let's figure out what the damages are and I will have [my client] cut a check."  (*Id.*)

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

On or about August 24, 2015, the parties agreed to proceed with mediation and mediation was eventually scheduled for  October 7, 2015 in Los Angeles, California. (McCue Decl. ¶ 5.)   In preparation, the parties selected a mediator, and Mr. McCue purchased plane tickets for himself and counsel for Bellagio, made hotel reservations, arranged space for the mediation, and paid Bellagio's share  of the mediator's fee.  (*Id.*)

### D.   *Bellagio Asked For Relevant Contracts and Licenses, To Which The Kolb Parties Indicated They Would Provide*

On August 17, 2015, Mr. Hamideh requested documents from Bellagio in order to prepare for the mediation.  (McCue Decl. ¶ 6.)  Likewise, Mr. McCue asked that the Kolb Parties provide relevant information and documents, such as the names and addresses of the people involved in creating the images at issue, the license for the images, documents showing the scope and duration of the license, contracts between the Kolb Parties and their modeling agency, and any documents related to the Kolb Parties' claim of injury.  (*See* McCue Decl. Ex. B August 18, 2015 email from Michael J. McCue to Bassil Hamideh.)

On August 19, 2015, Mr. Hamideh responded that he would "work to get you as much information as possible as quickly as possible."  (*See* McCue Decl. Ex. C, August 19, 2015 email from Bassil Hamideh to Michael J. McCue.)

On August 27, 2015, Mr. Hamideh again indicated, "I have been working with my clients on the information and documents you requested" and "I hope to have the requested documents and information for you by next week . . . ." (*See* McCue Decl. Ex. D, August 27, 2015 email from Bassil Hamideh to Michael J. McCue.)

More than two weeks later, on September 14, 2015, Mr. Hamideh indicated that he was "still working on gathering information from my clients." (*See* McCue Decl. Ex. E, September 14, 2015 email from Bassil Hamideh to Michael J. McCue.)

### E.     A Week Before Mediation, Bellagio Learned The Kolb Parties Did Not Have Critical, Relevant Documents

On September 24, 2015, after the Kolb Parties still had not provided any documents in response to Bellagio's document requests, Mr. McCue emailed Mr. Hamideh indicating that Bellagio would be sending "our information and documents tomorrow" and asked if Mr. Hamideh "commit to doing the same?" (*See* McCue Decl. Ex. F, September 24, 2015 email from Michael J. McCue to Bassil Hamideh.) Mr. McCue emphasized that to have "productive mediation, we need the information and documents" from the Kolb Parties because "[a]t this point, we do not have any of the basic facts from you other than what was contained in your [demand] letter." (*Id.*)  Mr. Hamideh responded that he would "have this for you" by early next week. (*See* McCue Decl. Ex. G, September 25, 2015 email from Bassil Hamideh to Michael J. McCue.)

On September 27, 2015, Mr. McCue emailed Mr. Hamideh information responsive to the Kolb Parties' requests. (*See* McCue Decl. ¶ 12.)  On September 28, 2015, Mr. Hamideh indicated that he would provide the information and documents from his clients "by the end of the day." (*See* McCue Decl. Ex. H, September 28, 2015 email from Bassil Hamideh to Michael J. McCue.)

Finally, at 8:14 p.m. on September 28, 2015, after the deadline for submitting mediation briefs had passed, Mr. Hamideh sent five emails to Bellagio's counsel with accompanying attachments representing the Kolb Parties' production of information and documents. (McCue Decl. ¶ 14.)  The documents that the Kolb Parties produced were largely unresponsive to Bellagio's requests.  (*Id.*)  For instance, there were 80 assorted images of the Kolb Parties, none of which are at issue in this case; rather, they appeared to be headshots or glamour shots of the Kolb Parties.  (*Id.*)  The Kolb Parties also produced advertisements for the Mayweather-

LEWIS ROCA ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

Pacquiao fight that occurred in Las Vegas in May 2015 (which occurred at the MGM Grand, not the Bellagio) and which has nothing to do with the facts of this case. (*Id.*)

The Kolb Parties failed to produce critical information and documents Bellagio that Bellagio had asked for in early August and that the Kolb Parties never objected to producing. (McCue Decl. ¶ 15.) For instance, the Kolb Parties did not provide a copy of the license or modeling contract with their modeling agency. (*Id.*) The Kolb Parties also did not provide any information or documents regarding the purported injury or damages that the Kolb Parties contend that they suffered. (*Id.*)

Upon reviewing the documents the Kolb Parties provided, Mr. McCue emailed the mediator and Mr. Hamideh asking for the mediation to be postponed for 10 to 14 days after the Kolb Parties comply with their promise to produce the information and documents that Bellagio requested for the mediation. (*See* McCue Decl. Ex. I, September 29, 2015, 1:52 p.m. email from Michael J. McCue to Denise Madigan and Bassil Hamideh.) Mr. McCue noted that the information and documents that the Kolb Parties produced the night before the mediation were not responsive to Bellagio's requests. (*Id.*) Mr. McCue explained that Bellagio still did not know the basic facts that would enable it to participate in a meaningful mediation. (*Id.*)

In response, Mr. Hamideh claimed "the documents you seek are in the emails sent last night." (*See* McCue Decl. Ex. J, September 29, 2015, 2:01 p.m. email from Bassil Hamideh to Michael J. McCue.) Mr. McCue reviewed the emails again. After confirming that the documents Bellagio asked for were not in the Kolb Parties' production, Mr. McCue emailed Mr. Hamideh and asked specifically for "copies of agreements/model releases." (*See* McCue Decl. Ex. K, September 29, 2015, 2:28 p.m. email from Michael J. McCue to Bassil Hamideh.)

In response, Mr. Hamideh sent another email with new attachments and claiming that the attachments contained the relevant documents. (*See* McCue Decl. Ex. L, September 29, 2015, 2:40 p.m. email from Bassil Hamideh to Michael J. McCue.) But again, there were no actual licenses, contracts or agreements relating to the photo-shoot, just emails the models received from their modeling agency regarding the photo-shoot and mention of payment. Again, Mr. McCue asked Mr. Hamideh for the licenses and agreements. (*See* McCue Decl. Ex. M, September 29, 2015, 3:47 p.m. email from Michael J. McCue to Bassil Hamideh.) In response, *for the first time*, Mr. Hamideh admitted that his clients did not have any agreements with their modeling agency and did not have the model releases. (*See* McCue Decl. Ex. N, September 29, 2015, 7:14 p.m. email from Bassil Hamideh to Michael J. McCue.)

## F.    The Kolb Parties Admitted They Did Not Have Relevant Documents and Refused to Postpone Mediation

On September 30, 2015, Mr. McCue spoke to Mr. Hamideh over the phone. (McCue Decl. ¶ 21.) During the call, Mr. Hamideh confirmed that he had no model releases or modeling contracts. (*Id.*) Mr. McCue expressed concern that Mr. Hamideh did not reveal this fact earlier but rather on the eve of mediation. (*Id.*) Mr. McCue also expressed concern that his office had not received any information or documents on how much Mr. Hamideh's clients were seeking in damages. (*Id.*) Mr. Hamideh refused to provide an offer, and instead, opinioned generally that he would not agree to settle for less than $100,000 per model. (*Id.*) In light of the lack of information, Mr. McCue indicated that his client could not participate in mediation the following week. (*Id.*) Mr. Hamideh indicated that he would not agree to postpone the mediation. (*Id.*) During the call, Mr. Hamideh did not tell Mr. McCue that the Kolb Parties would file suit in California if mediation failed or that such a suit was imminent. (*Id.*)

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

### G.     Bellagio Filed the Nevada Action

As a result of the Kolb Parties' failure to comply with the parties' agreement to exchange certain information and documents in advance of the mediation and the Kolb Parties' refusal to postpone the mediation by 10 to 14 days after the information and documents were produced, and fueled by the Kolb Parties' unrealistic settlement expectations, Bellagio concluded that the parties were at an impasse and decided to proceeded with filing suit.  (McCue Decl. ¶ 22.)

On September 30, 2015, Bellagio filed a declaratory relief action in the United States District Court for the District of Nevada (Case No: 2:15-cv-01879-GMN-PAL) against the Kolb Parties seeking a declaration that Bellagio had not infringed any of the Kolb Parties' rights of publicity in connection with the photographs taken of the Kolb Parties in a photo-shoot in December 2009.  (McCue Decl. Ex. O, Nev. Compl. ¶¶ 12, 23.)  Bellagio began preparing the complaint on September 29, 2015 after it appeared that the Kolb Parties were not cooperating.  (McCue Decl. ¶ 23.)

On October 1, 2015, Mr. McCue wrote to Mr. Hamideh to inform him of the lawsuit.  (McCue Decl. Ex. P, October 1, 2015 email from Michael J. McCue to Bassil Hamideh.)  Mr. McCue explained that since early August 2015, he had made it clear to the Kolb Parties that a productive mediation required the parties to exchange relevant information and documents, and that  Bellagio had been asking for relevant documents and information since August 18, 2015.  (*Id.*)  The Kolb Parties never objected and repeatedly confirmed that they were gathering documents.  (*Id.*)  Yet, the week before mediation, Bellagio learned, for the first time, that the Kolb Parties did not have the most basic documents, such as the licensing agreement or contracts with their modeling agency.  (*Id.*)  Mr. McCue further explained that the models never provided information or documents on damages.  (*Id.*)   Thus, based on what appeared to be the Kolb Parties' failure and

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

1  refusal to provide information and documents needed for a productive mediation, the
2  Bellagio proceeded with suit.  (*Id.*)

### H.  Kolb Parties Filed the California Action

4  Upon learning that Bellagio filed suit, on October 1, 2015, the Kolb Parties
5  filed this action in the Superior Court of California, County of Los Angeles.
6  (McCue Decl. ¶ 25.)  On October 6, 2015, the Kolb Parties filed their First Amended
7  Complaint adding MGM as a Defendant.  (*Id.*)  MGM was joined as a plaintiff in the
8  Nevada Action.  (McCue Decl. Ex. Q, Nev. First Am. Compl.)

### I.  The Kolb Parties Intend to Move to Dismiss in the Nevada Action

10  On October 16, 2015, the Kolb Parties sent MGM and Bellagio an unfiled
11  motion that included a request for sanctions and a motion to dismiss the Nevada
12  Action under an exception to the first-to-file rule, and based on allegations of lack of
13  personal jurisdiction over the Kolb Parties.  (McCue Decl. ¶ 27.)  Additionally, the
14  motion argued that venue should be transferred to California.  (*Id.*)  The Kolb Parties
15  demanded that Bellagio and MGM dismiss the Nevada Action, which they declined.
16  (*Id.*)

### J.  The Kolb Parties Did Not Consent To Dismiss This Case

18  On November 2, 2015, counsel for MGM and Bellagio requested that the
19  Kolb Parties dismiss the California Action because the Nevada Action was the first
20  filed action.  (McCue Decl. ¶ 28.)  The Kolb Parties declined.  (*Id.*)  On December 7,
21  2015, MGM and Bellagio again asked if the Kolb Parties would agree to dismiss the
22  California Action based on the first-to-file rule and additionally asked the Kolb
23  Parties if they would agree to dismiss the California Action for lack of personal
24  jurisdiction.  (*Id.*)  After conference of counsel, the Kolb Parties declined.  (*Id.*)

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS THIS CASE FOR LACK OF PERSONAL JURISDICTION OVER BELLAGIO AND MGM**

California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citation and quotations omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing that jurisdiction is proper. *Washington Shoe Co. v. A–Z Sporting Goods Inc.,* 704 F.3d 668, 671–72 (9th Cir. 2012). Each defendant's contacts with the forum state must be considered individually, unless the plaintiff establishes the defendant's actions are reasonably attributable to the other defendants. *See, e.g.*, *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.,* 880 F. Supp. 743, 750–51 (C.D. Cal. 1995).

   **A.    There Is No General Jurisdiction over Bellagio or MGM**

General personal jurisdiction enables a court to hear cases unrelated to the defendant's forum activities if the defendant's contacts with the forum are so "substantial" or "continuous and systematic" as to render it "essentially at home" in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014); *see also*

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

*CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011) ("A court may assert general jurisdiction over foreign [sister-state or foreign-country] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state."). The standard is an "exacting" one, considering the "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *CollegeSource, Inc.,* 653 F.3d at 1074 (*citing Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th Cir. 2006)).

Here, initially, it is unclear the basis for jurisdiction (specific or general) over MGM. The demand letter never mentions MGM. The First Amended Complaint seems to lump MGM together with Bellagio because MGM "is the ultimate parent of Defendant Bellagio." (First Am. Compl. ¶ 10.) To the extent that is the basis for jurisdiction over MGM, MGM should be dismissed outright. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction").

General jurisdiction does not exist in any case as neither Bellagio nor MGM Resorts has substantial or continuous and systematic contacts with California to render it "essentially at home" in California. With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] ... bases for general jurisdiction." *Daimler AG*, 134 S. Ct. at 760 (citation omitted).

Bellagio is incorporated in Nevada and its principal place of business is the Bellagio hotel and casino in Las Vegas, Nevada. (Chaparian Decl. ¶ 3.) The Bellagio does not operate in California, does not own property in California, and is not licensed to do business in California. (*Id.*)

Likewise, MGM is incorporated in Delaware and its principal place of business is in Las Vegas, Nevada. (Chaparian Decl. ¶ 2.) It has no offices in

11

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

California and is not licensed to do business in California. (*Id.*)

The First Amended Complaint alleges, in conclusory fashion, that Bellagio and MGM "continuously and systematically conduct substantial business throughout Los Angeles County and the State of California by advertising, marketing, offering for sale, and selling its goods and services to individuals and businesses who reside in Los Angeles County." (First Am. Compl. ¶¶ 3-4.) This boilerplate recitation does not meet the exacting standards for exercise of general jurisdiction. However, even if considered on its face, it is insufficient. As the Supreme Court recently held, substantial business, by itself, is not sufficient to warrant the extraordinary exercise of general jurisdiction. *Daimler AG*, 134 S. Ct. at 761 (reversing appellate court for finding general jurisdiction based on the purported "sizable" amount of sales). Similarly, evidence of marketing to forum residents, without more, is insufficient to support general jurisdiction. *See CollegeSource, Inc.,* 653 F.3d at 1075 ("Marketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction."); *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381–82 (9th Cir. 1990) (no general jurisdiction despite advertising in the local media, brochure mailings, payment of commission to forum travel agents, and the conducting of promotional seminars in the forum state). Indeed, California district courts have found this exact argument insufficient to exercise general jurisdiction on hotel and casinos in Las Vegas. *Rowland v. Paris Las Vegas*, No. 3:13–cv–02630–GPC–DHB, 2014 WL 3867528, at *6 (S.D. Cal. Aug. 6, 2014) (evidence of marketing in California did not support exercise of general jurisdiction over Las Vegas hotel and casino); *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC,* No. C–07–3983, 2007 WL 4532214, at *3 (N.D. Cal. Dec. 19, 2007) (no general personal jurisdiction in California over Las Vegas hotel and casino despite "the Venetian's advertising and marketing scheme in California, the Venetian's website, and the large percentage of

1  Californian customers").

2      For the foregoing reasons, there is no general jurisdiction over Bellagio or

3  MGM Resorts.

4  **B.**      ***There Is No Specific Jurisdiction over Bellagio or MGM***

5      The Ninth Circuit employs a three-part test to determine whether a defendant

6  has sufficient minimum contacts to be subject to specific personal jurisdiction:

7

8      (1) The non-resident defendant must [a] purposefully direct his
       activities or consummate some transaction with the forum or resident
       thereof; or [b] perform some act by which he purposefully avails

9      himself of the privilege of conducting activities in the forum, thereby
       invoking the benefits and protections of its laws;

10

11     (2) the claim must be one which arises out of or relates to the
       defendant's forum-related activities; and

12     (3) the exercise of jurisdiction must comport with fair play and
       substantial justice, *i.e.* it must be reasonable.

13

14  *Washington Shoe,* 704 F.3d at 672; *see also Lake v. Lake,* 817 F.2d 1416, 1421 (9th

15  Cir. 1987). In analyzing whether the assertion of specific jurisdiction over a given

16  defendant would be justified, the plaintiff has the burden of satisfying the first two

17  prongs of the test. *CollegeSource, Inc.,* 653 F.3d at1076.  The plaintiff cannot be the

18  defendant's only connection to the forum state.  *Walden,* 134 S.Ct. at 1121.

19      For the first prong, courts generally utilize the purposeful direction analysis.

20  *See, e.g.*, *Browne v. McCain*, 612 F. Supp. 2d 1118, 1123 (C.D. Cal. 2009) (applying

21  test in right of publicity case). The Ninth Circuit applies an "effects" test to

22  determine whether there has been purposeful direction, analyzing whether the

23  defendant has been alleged to have: "(1) committed an intentional act, (2) expressly

24  aimed at the forum state, (3) causing harm that the defendant knows is likely to be

25  suffered in the forum state." *CollegeSource, Inc.,* 653 F.3d at 1077 (citation

26  omitted).

27

28

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

LEWIS ROCA
ROTHGERBER

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

The Supreme Court recently clarified the requirements for a finding of specific jurisdiction in *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014). The Supreme Court held that a Nevada district court could not exercise specific jurisdiction over a Georgia police officer who, while working as a deputized DEA agent at a Georgia airport, searched a Nevada-bound couple and seized almost $97,000 in cash representing legitimate gambling proceeds. *Id.* at 1119. Noting that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." (*id.* at 1126), the Supreme Court found defendant's actions in Georgia "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 1125. The Court continued, "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of [the officer's] challenged conduct had anything to do with Nevada itself." *Id.*

Here, there is no specific jurisdiction because the first prong of the jurisdictional test is not satisfied. Specifically, there is no evidence that Bellagio or MGM purposefully directed its activities towards California. Indeed, Bellagio and MGM did not have direct contact with the Kolb Parties, and, even if they did, they would not have known that they resided in California. (Chaparian Decl. ¶¶ 5-6, 9); *see Browne*, 612 F. Supp. 2d at 1125 (dismissing right of publicity action because plaintiff being "well-known Southern California resident, alone, is insufficient to establish that [defendant] knew its allegedly improper act would cause Browne harm in California. Moreover, [defendant] has presented evidence showing its officers did not know that Browne was a California resident").

The First Amended Complaint seemingly tries to establish personal jurisdiction by alleging "Plaintiffs entered into an agreement with Bellagio wherein the Plaintiffs agreed to have photographs taken of them in December 22, 2009."

(First Am. Compl. ¶ 11.)  However, this is disputed by Bellagio – there apparently is no agreement between Bellagio and the Kolb Parties because Bellagio never had direct contact with the Kolb Parties.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("we may not assume the truth of allegations in a pleading which are contradicted by affidavit").

The First Amended Complaint also claims that MGM and Bellagio "decided to re-new and continue the commercial use of all [Kolb Parties'] images" and that MGM and Bellagio contacted the Kolb Parties' "former modeling agency to attempt to re-negotiate additional usage terms for a one year period," but terminated those negotiations after determining that it would cost too much.  (First Am. Compl. ¶ 12.)  To the extent the Kolb Parties attempt to claim that MGM and Bellagio should be haled to a California court solely based on "decid[ing]" in Nevada to use images of California residents knowing they were California residents (something Plaintiffs do not even allege), the recent *Walden* case would foreclose such a theory.  *Walden*, 134 S. Ct. at 1124; *see, e.g.*, *Bixby v. KBR, Inc.*, 603 F. App'x 605, 606 (9th Cir. 2015) (reversing jury trial for lack of specific jurisdiction as it was only based on claim that defendant "knew the persons to whom they intentionally directed their misrepresentations and failures to disclose were soldiers of the Oregon National Guard").  Additionally, as noted above, given MGM and Bellagio never had direct contact with the Kolb Parties, MGM and Bellagio would not have known the Kolb Parties' residencies.  (Chaparian Decl. ¶ 10.)

Rather, it is likely that the modeling agency negotiated with the photographers, Mr. Muscionico or Ms. Jones, but they *are not* Bellagio or MGM.  The First Amended Complaint's boilerplate claim that Bellagio or MGM authorized, directed, or ratified the actions "herein alleged" is insufficient to support agency in the first place.  *Imageline, Inc. v. CafePress.com, Inc.*, No. CV 10–9794 PSG (MANx), 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011) (noting similar

15

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

1  allegations that each defendant was acting as the agent of the remaining defendants
2  "are nothing more than legal conclusions of the type prohibited by *Iqbal* and
3  *Twombly*").

4      Indeed, Mr. Muscionico and Ms. Jones appear to be photographers with their
5  own independent company.  (*See* Exs. R & S to McCue Decl.) They have no
6  contractual relationship with MGM or Bellagio, and MGM and Bellagio had no
7  control over whom they chose for models.  (Chaparian Decl. ¶¶ 5-6.); *see, e.g.*,
8  *Hernandez v. City of Beaumont*, No. EDCV 13–00967 DDP (DTBx), 2014 WL
9  6943881, at *3 (C.D. Cal. Dec. 8, 2014) (finding individual not an agent as to
10 impute his activities to foreign company for specific jurisdiction as he "is not an
11 employee of Piexon; had no contractual relationship with Piexon; and Piexon did
12 not, and could not, direct or require Bacolini to instruct others in the use of the
13 JPX"); *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 474 (1985) ("The
14 unilateral activity of those who claim some relationship with a nonresident
15 defendant cannot satisfy the requirement of contact with the forum State") (citation
16 omitted); *cf. Gerritsen v. Warner Bros. Entm't Inc.*, No. CV 14–03305 MMM
17 (CWx), 2015 WL 4069617, at *23 (C.D. Cal. Jan. 30, 2015) (dismissing complaint
18 for failing to allege facts to show agency). In light of the foregoing, Bellagio and
19 MGM did not commit any intentional acts "expressly aimed" at California to
20 warrant the exercise of personal jurisdiction.

21     In sum, this Court should dismiss this case for lack of personal jurisdiction.

22 **II.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE
          CALIFORNIA ACTION BASED ON THE FIRST-TO-FILE RULE**
23
          **A.   *The First-to-File Rule is Clearly Satisfied***
24
25     The first-to-file rule "allows a district court to transfer, stay, or dismiss an
26 action when a similar complaint has already been filed in another court." *Alltrade,*
27 *Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).  "The purpose of
28

LEWIS ROCA ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

the rule is to promote efficiency and avoid duplicative litigation." *Shizzle Pop, LLC v. Wham–O, Inc.,* No. CV 10–3491, 2010 WL 3063066, at *2 (C.D. Cal. Aug. 2, 2010). "[U]nless compelling circumstances justify departure from the rule, the first-filing party should be permitted to proceed without concern about a conflicting order being issued in the later-filed action." *Guthy–Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 270 (C.D. Cal. 1998). The first-to-file rule "does not require identical parties or issues, so long as the actions are substantially similar or involve substantial overlap." *PETA, Inc. v. Beyond the Frame, Ltd.,* No. CV 10–07576 MMM (SSx), 2011 WL 686158, at *2 (C.D. Cal. Feb. 16, 2011) (collecting cases).

Here, the first-to-file rule is clearly satisfied. The Nevada Action was filed on September 30, 2015. The California Action was filed on October 1, 2015. The parties in the cases are identical. The issues are identical. Both cases would address the issue of whether Bellagio and MGM have infringed the Kolb Parties' rights of publicity arising from use of photos taken at a photo shoot in Nevada in December 2009. Thus, unless compelling reasons justify a departure, this case must be transferred, stayed, or dismissed.

### B. The Exceptions to the First-to-File Rule do not Apply

Exceptions to the first-to-file rule include: (a) bad faith, (b) anticipatory suit, and (c) forum shopping. *Alltrade, Inc.,* 946 F.2d at 625-26. None of these exception apply here.

#### 1. The Nevada Action was not filed in bad faith as an anticipatory suit

Anticipatory suits are found when the "plaintiff in the first-filed action filed suit on receipt of **specific, concrete** indications that a suit by the defendant **was imminent**." *Xoxide, Inc. v. Ford Motor Co.,* 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006) (emphasis added). For instance, in *Xoxide,* Xoxide was warned by Ford that

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

Ford would file suit by a specific date if Xoxide would not agree to terms of settlement. Xoxide discussed settlement and partly conceded to Ford's demands, prolonging settlement discussions. Then, in the midst of those discussions, Xoxide filed a complaint against Ford, admitting that the suit was "insurance" for forum in case Ford also filed suit in another forum. Likewise, in *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 666 (N.D. Cal. 2003), after receiving a demand letter, Z-Line asked for an extension of time "to explore settlement possibilities," and then filed suit. The *Z-Line* court found the suit was anticipatory. However, the *Z-Line* court specifically distinguished its case from that of *Royal Queentex Enters. v. Sara Lee Corp.*, No. C–99–4787 MJJ, 2000 WL 246599 (N.D. Cal., Mar. 1, 2000).

In *Royal Queentex*, the court found that the suit was not improper forum shopping because parties are entitled to file suit to take an aggressive stance and there was no misleading communications by the first filing party before filing suit. There, Sara Lee sent a cease and desist letter to Royal Queenex, threatening Royal Queenex with trademark infringement and indicating that Sara Lee would agree to forgo legal action if Royal Queenex ceased its infringing conduct. Royal Queentex filed suit instead. In rejecting claims that Royal Queentex filed an anticipatory suit that constituted forum shopping, the court found that "Royal Queentex clearly had the right both to reject Sara Lee's offer to discuss settlement and to take an aggressive stance by immediately filing a declaratory judgment action upon receiving the cease and desist letter." *Royal Queentex*, 2000 WL 246599, at *4. "While [a demand] letter is one factor this Court takes into consideration in determining whether the California action was filed in anticipation of the North Carolina action, a cease and desist letter itself is not dispositive unless it provides 'specific, concrete indications that a suit by [D]efendant was imminent.'" *Id.* at *5 (citation omitted). In Queentex's case, a letter indicating that a party will forgo legal

action if the matter was be amicably resolved only "constituted specific, concrete indications of a legal dispute, but not ***specific, concrete indications that suit was imminent***." *Id.* (emphasis added); *see also Bryant v. Oxxford Express, Inc.*, 181 F.Supp.2d 1045, 1048–49 (C.D. Cal. 2000) (finding that the anticipatory suit exception did not apply because the defendant's letter to the plaintiff did not indicate that a lawsuit was imminent and the plaintiff already had a preexisting motive to go to court); *Guthy–Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998) (finding that the defendant's letter informing the plaintiff about possible patent infringements did not show imminently threatened litigation); *TIG Ins. Co. v. Dillard's Inc.*, 132 F. Supp. 2d 1277 (D. Nev. 2001) ("the parties have spent several years trying to resolve this dispute and, when they were unable to do so, resorted to the courts. The fact that one beat the other to the courthouse door is not dispositive… neither party can reasonably be accused of forum shopping").

Here, there was no specific, concrete indication that a suit was imminent. In a prior filing, the Kolb Parties claim that they informed undersigned counsel that they would file suit in California if the mediation did not settle during the September 30, 2015 call. (*See* Decl. of Hamideh in Support of Opp'n to Stay, ¶ 6, Doc. No. 11-1.) The undersigned disputes this claim. During the September 30, 3015 call, the Kolb Parties did not say that they would immediately file suit in California if mediation did not go forward. (McCue Decl. ¶ 21.) At best, under the circumstances, Bellagio was aware that there was a legal dispute and a possibility of suit, but such knowledge, alone is not sufficient to charge Bellagio with filing in anticipation of ***imminent*** suit. *Royal Queentex*, 2000 WL 246599, at *5.

Bellagio's suit was not a reaction to any claims of imminent suit by the Kolb Parties because Bellagio had already prepared the complaint that eventually filed. (McCue Decl. ¶ 23.) Like in *TIG Ins. Co.*, 132 F. Supp. 2d 1281, Bellagio simply filed suit in Las Vegas where the plaintiffs are based, where the Kolb Parties

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169-5996

voluntarily appeared to participate in the photo-shoot for the images at issue, and where the images at issues were used.  Bellagio only filed suit after the Kolb Parties failed to provide the information and documents that Bellagio had requested for mediation, after the Kolb Parties refused to reschedule the mediation for a date after production of the information and documents, and after the Kolb Parties made it clear that that they would not settle for less than an amount that Bellagio and MGM believed was absurd.  After reaching this impasse, Bellagio simply moved forward with filing suit, without any knowledge that the Kolb Parties were planning to file suit as well or that they would file suit in California.  (McCue Decl. ¶¶ 21-23.)  At the time it did so, there was no imminent threat of suit, and Bellagio was simply taking an aggressive stance by filing suit in an appropriate forum.  *Royal Queentex*, 2000 WL 246599, at *4 ("Royal Queentex clearly had the right both to reject Sara Lee's offer to discuss settlement and to take an aggressive stance by immediately filing a declaratory judgment action upon receiving the cease and desist letter").

Put simply, Bellagio's suit was "anticipatory" in the same way that ***all*** declaratory relief claims are anticipatory.  The entire purpose of the Declaratory Judgment Act is to allow a party, like Bellagio, to bring suit to resolve a dispute "without waiting to be sued."  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 397 (5th Cir. 2003) (rejecting claims that filing declaratory judgment claim in response to threat of future state court cases was unfair given "[a] proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued."); *see also* Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1238 (3d ed.) ("Easily the most common kind of [declaratory] action…is a suit by one thought to be an infringer for a declaration that he is not infringing the patent or that the patent is invalid") ("Wright and Miller").

Thus, even if Bellagio "raced[d]" to the Courthouse, which is not the case, that is not improper in and of itself.  In both *Xoxide* and *Z-Line*, on which the Kolb

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

LEWIS ROCA
ROTHGERBER

Parties rely, the offending party ***mislead*** the other party into delaying suit in order to "win" the race. *Cf. Royal Queentex Enters.*, 2000 WL 246599, at *4 ("the court was not penalizing plaintiff for winning the race to the courthouse; rather, the court penalized plaintiff for the tactics used to win the race"). Here, to the contrary, the Kolb Parties cannot point to any misleading statement by Bellagio's counsel that was used to "win" the "race" to the courthouse. In a prior filing, the Kolb Parties claim the entire mediation was a "ruse." (*See* Opp'n to Stay, at 13:25, Doc. No. 11.) Such an accusation is absurd. Bellagio purchased plane tickets to come to Los Angeles for mediation, booked hotel rooms, arranged a conference room for the mediation, paid its mediation fees, gave the Kolb Parties documents that it was able to locate in preparation for mediation, and despite the Kolb Parties' failure to cooperate, was still willing to participate in the mediation provided that the Kolb Parties produced the information and documents requested. (McCue Decl. ¶¶ 5, 24.) After approximately six weeks of pre-mediation activity, it was the Kolb Parties' conduct that prompted the Bellagio to request a postponement of the mediation and, after the Kolb Parties refused and the parties were at an impasse, only then did Bellagio proceed with filing suit. The email exchange between counsel clearly shows that the impasse arouse after the Kolb Parties failed to produce the critical documents that Bellagio had been requesting for over a month, did not tell Bellagio that they did not have those documents, and even tried to hide that fact by telling Bellagio that the documents Bellagio asked for were already produced. The Kolb Parties finally admitted that they did not have the documents less than one week before the scheduled mediation.

Bellagio's decision to file suit was due to the impasse in the mediation process (namely, the Kolb Parties' failure to produce critical information and documents that Bellagio and MGM needed for the mediation and the Kolb Parties' refusal to postpone the mediation until after they complied) and the Kolb Parties' disclosure

LEWIS ROCA
ROTHGERBER

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169-5996

that the minimum amount that they were seeking was absurdly high.  It became clear to Bellagio and MGM that the mediation process was fruitless and the Kolb Parties' expectations were unreasonable. After wasting weeks of time, money and effort, Bellagio and MGM simply decided that enough was enough and they filed suit. This was not a decision made in response to an imminent threat of litigation by the Kolb Parties.  There was no such threat.

In sum, the Court should dismiss this case based on the first-to-file rule.

## CONCLUSION

The Court should dismiss this action based on the lack of personal jurisdiction.  Alternatively, the Court should dismiss this case based on the first-to-file rule.

Dated:   December 14th, 2015

LEWIS ROCA ROTHGERBER LLP

By: /s/ Michael J. McCue
Michael J. McCue
Email:  MMcCue@LRRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169-5996
(702) 949-8200 (Tel.)

Aaron D. Johnson
Email:  ADJohnson@LRRLaw.com
4300 Bohannon Drive, Suite 230
Melo Park, California 94025
(650) 391-1380 (Tel.)
*Attorneys for Defendants Bellagio LLC and MGM Resorts International*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2015, a true and accurate copy of the foregoing paper entitled, **DEFENDANTS BELLAGIO, LLC AND MGM RESORTS INTERNATIONAL'S NOTICE OF MOTION AND MOTION TO DISMISS**, was filed electronically with the Clerk of the Court through the Court's CM/ECF system and served through that system to the following:

> Bassil A. Hamideh
> THE HAMIDEH FIRM, P.C.
> 1801 Century Park  East, Suite 2400
> Los Angeles, CA  90067
> Fax:  310-733-5699
> E-mail:  bhamideh@hamidehfirm.com

 /s/ Meng Zhong
An employee of Lewis Roca Rothgerber LLP

23
*Kolb, et al. v. Bellagio, et al.*, 2:15−cv−08512 SVW(JPRx)
Motion to Dismiss