Bassil A. Hamideh (SBN 261233)
THE HAMIDEH FIRM, P.C.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: (310) 556-9687
Facsimile: (310) 733-5699
Email: bhamideh@hamidehfirm.com

Attorneys for Plaintiffs,
FORREST KOLB
JINYONG NA
LYNE RENEE
JONATHAN FRITZ
APRIL HUTCHINGS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORREST KOLB;<br>JINYONG NA;<br>LYNE RENEE;<br>JONATHAN FRITZ; and<br>APRIL HUTCHINGS,<br><br>Plaintiffs,<br><br>vs.<br><br>BELLAGIO LLC, a Nevada Limited Liability Company; MGM RESORTS INTERNATIONAL; and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 2:15-cv-08512-SVW-JPR<br><br>**DISCOVERY MATTER:**<br><br>**JOINT STIPULATION RE: PLAINTIFFS' MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS FROM DEFENDANTS**<br><br>[Declaration of Bassil A. Hamideh and Michael J. McCue concurrently herewith]<br><br>Hearing<br>Date: July 21, 2016<br>Time: 10:00 a.m.<br>Courtroom: 827-A<br><br>Discovery Cutoff: TBD<br>Pretrial Conf: TBD<br>Trial: TBD<br><br>Action Filed: October 1, 2015<br><br>Honorable Judge Stephen V. Wilson<br>Magistrate Judge Jean P. Rosenbluth |

# TABLE OF CONTENTS

I.   JOINT STIPULATION .................................................................................. 1

II.   MEET AND CONFER EFFORTS ............................................................... 1

III.   RELEVANT FACTS AND PROCEEDINGS ............................................. 2

   A.   Factual background .................................................................................. 2

   B.   Procedural background ............................................................................ 4

IV.   INTRODUCTORY STATEMENTS ............................................................ 5

   A.   Plaintiffs' introductory statement ............................................................ 5

   B.   Defendants' introductory statement ........................................................ 8

V.   REQUEST FOR PRODUCTION IN DISPUTE AND DEFENDANTS' RESPONSE ....................................................................................................... 9

   A.   Plaintiffs' Request for Production No. 24 ............................................... 9

   B.   Defendants' Response to Request for Production No. 24 ...................... 9

   C.   Plaintiffs' Argument to Compel Further Production ............................... 9

   D.   Defendants' Opposition to Compel Further Production ....................... 11

## I. JOINT STIPULATION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure ("FRCP") and Local Rule 37-2.1, Plaintiffs Forrest Kolb, Jinyong Na, Jonathan Fritz, Lyne Renee, and April Hutchings (collectively "Plaintiffs") and Defendants Bellagio, LLC and MGM Resorts International (collectively "Defendants") submit this Joint Stipulation regarding Plaintiffs' Motion to Compel further production of documents in response to Plaintiffs' first set of Requests for Production.

## II. MEET AND CONFER EFFORTS

Counsel for the parties began the meet and confer process on February 24, 2016 when counsel for Plaintiffs sent a detailed letter regarding deficiencies in a number of Defendants' discovery responses. *See* Declaration of Bassil A. Hamideh ("Hamideh Decl.") ¶ 3, Ex. 1. Thereafter, counsel engaged in a detailed telephonic meet and confer and subsequently exchanged emails and follow up letters. *See* Hamideh Decl. ¶ 3.

On April 1, 2016, Defendants provided supplemental responses. Hamideh Decl. ¶ 5. Subsequent to April 1, 2016, the parties engaged in further meet and confer efforts. Hamideh Decl. ¶ 6. As a result of the meet and confer efforts, the parties were able to resolve the vast majority of their differences. Hamideh Decl. ¶ 7.

However, the parties were unable to resolve one major dispute relevant to this motion to compel – revenues generated by Defendants' website: www.bellagio.com. Hamideh Decl. ¶ 7. After the extensive meet and confer efforts, counsel for Defendants have stated that they will not produce any further responses or documents regarding all revenue generated from Bellagio.com. *Id.*

*Defendants' Additional Comments Re Meet and Confer Efforts*: The discovery that Plaintiffs seek to compel was not the subject of any discovery request. Rather, Plaintiffs asked Defendant to produce revenue generated through the Bellagio.com website during a May 20, 2016 discussion regarding other

discovery issues. *Compare* Meet and Confer Letters at 1-10 (Feb. 2016 meet and confer letter) *to* 23 (email regarding meet and confer call), Ex. 1 to Hamideh Decl. Despite the lack of an applicable discovery request, Defendants proposed a compromise by offering to produce records of revenue, if any, that can be discerned from the specific webpages of the Bellagio.com website that contained Plaintiffs' pictures for the period of time that allegedly exceeded the license period, which was from December 2014 to December 2015. *See* Meet and Confer Letters at 21, Ex. 1 to Hamideh Decl. Plaintiffs did not accept the compromise.

## III. RELEVANT FACTS AND PROCEEDINGS

### A. Plaintiffs' Factual background

Bellagio is a world-famous resort hotel and casino located on the Las Vegas Strip, and MGM Resorts International is the ultimate parent of Bellagio, LLC. Plaintiffs have been highly successful models and actors who are recognizable because of their appearances in advertising campaigns, television commercials, and high fashion runway shows, all having significant commercial value.

In 2009, Defendants chose Plaintiffs as models for a number of images to be used by Defendants to promote their world-famous resort hotels and casinos. In December 2009, Plaintiffs participated in a photo shoot, which took place at the Bellagio hotel and casino. The deal for the original term of use was five years from the original shoot day, wherein all rights Defendants had to use any of Plaintiffs' images and likenesses ended no later than December 21, 2014.

Defendants then used Plaintiffs' images for Defendants' commercial purposes. After the expiration of any lawful right to use Plaintiffs' images, Defendants proceeded to re-new the use of all Plaintiffs' images for commercial purposes. Such uses of Plaintiffs' images and photographs included prominent uses on many pages throughout Defendants' websites, Defendants' printed brochures, pamphlets, online downloadable brochures, Defendants' Facebook page, uses on Defendants' pages of third-party websites, including without limitation Trip

Advisor and Orbitz, and numerous other forms of advertising mediums.

### B. Defendants' Factual Background

Plaintiffs were professional models who were paid approximately $3,200 each for a 5 year license to use their images in advertising and promotional materials for the Bellagio. (Sec. Am. Compl. ¶ 18, Ex. A to McCue Decl.) In July 2015, Plaintiffs accused the Bellagio of using the images beyond the length of the license. Some of the images appeared on Bellagio.com's website. Eighteen webpages from Bellagio.com have been identified as containing an image of one or more of the Plaintiffs: [1]

http://bellagio.com/amenities/ (thumbnail)
http://bellagio.com/amenities/concierge-of-bellagio.aspx
http://www.bellagio.com/download-brochures/ (thumbnail)
http://www.bellagio.com/offers/2010/06_june_percentage/email.html
http://www.bellagio.com/offers/2014/06_conc_rec_flipbook/index.html
https://www.bellagio.com/es/amenities/concierge.aspx
https://www.bellagio.com/ja/amenities/concierge.aspx
www.bellagio.com/casino/slot-video-recap.aspx
http://bellagio.com/casino/slot-jackpots.aspx
http://bellagio.com/casino/special-events.aspx (thumbnail)
http://bellagio.com/hotel/chic-affairs.aspx
http://bellagio.com/shopping/ (thumbnail)
http://bellagio.com/hotel/hotel-promotions.aspx (thumbnail)
http://www.bellagio.com/international/ (thumbnail)
http://bellagio.com/casino/event-winners.aspx
http://bellagio.com/casino/special-events.aspx (thumbnail)
http://bellagio.com/casino/ (thumbnail)
http://bellagio.com/casino/marker-limit-application.aspx

(Screenshots of Webpages, Ex. B to McCue Decl.) During 2015, Bellagio.com had between 200-300 webpages.

After Plaintiffs notified Bellagio of the continued use of the photos in or around June 2016, Bellagio conducted a sweep of the website and removed all of the photos it could find containing images of the Plaintiffs. In or around September 2015, the Plaintiffs subsequently contended that some of the photos were still in use, but Plaintiffs refused to provide any information on the location of the uses.

---

[1] Some of the webpages are actually the same webpage but simply in different languages.

Bellagio conducted a second sweep. To the best of its knowledge, any isolated remaining uses of the images at issue ceased by no later than January 2016.

The images at issue are stock photographs used on informational webpages from the Bellagio.com website. As an example, below is a screenshot of the webpage at http://bellagio.com/amenities/concierge-of-bellagio.aspx:



(Ex. B-0042 to McCue Decl.) The webpage lists the Bellagio's concierge services, contact information, and hours of operation.[2] Other pages are similarly informational in nature, providing information such as list of shops (*id.* at 0040), contact information for applying for credit markers (*id.* at 0045), or past jackpot payouts (*id.* at 46).

B. Procedural background

On July 22, 2015, counsel for Plaintiffs sent a settlement communication letter to Defendants. Thereafter, counsel for the parties agreed to participate in mediation and a mediation was scheduled for October 7, 2015. On September 30, 2015, Defendants' counsel informed Plaintiffs' counsel, and the mediator, that Defendants would not participate in the mediation and that Defendants had filed a

---

[2] Plaintiffs assertions that Bellagio used the images on Facebook is a red herring. The Facebook post they are referencing was posted in 2012. As Plaintiffs admit, Bellagio had the right to use the images in 2012.

declaratory relief action in Nevada.

On October 1, 2015, Plaintiffs filed their Complaint in Los Angeles Superior Court (Case No. BC596667).  On October 6, 2015, Plaintiffs filed their First Amended Complaint in Los Angeles Superior Court.  On October 30, 2015, Defendants removed Plaintiffs' case from the Los Angeles Superior Court.

On December 14, 2015, Defendants moved to dismiss this case based on lack of personal jurisdiction and the first-to-file rule because they had improperly filed an anticipatory case in Nevada before Plaintiffs could file this case. On January 21, 2016, the Court rejected Defendants' first-to-file argument but granted the motion on jurisdiction grounds, giving Plaintiffs leave to amend.

On February 26, 2016, Plaintiffs filed their Second Amended Complaint. On March 16, 2016, Defendants filed a motion to dismiss the Second Amended Complaint on personal jurisdiction grounds. On April 25, 2016, after Plaintiffs filed their opposition to the motion to dismiss, Defendants filed a notice that they were withdrawing their motion to dismiss.

**IV.     INTRODUCTORY STATEMENTS**

A. <u>Plaintiffs' introductory statement</u>

The issue in dispute is the production of documents related to revenues generated by Defendants through their websites, notably www.bellagio.com. Defendants have stated that they will search for any records of revenue from the specific webpages with Plaintiffs' images on them from December 2014 to December 2015 and determine how difficult it is to extract. Defendants have stated they will not produce documents related to revenue for an entire website, like Bellagio.com.

First, Defendants must be compelled to produce all documents concerning revenues from two years prior to the date they first began using Plaintiffs' images to the present.  Such a time frame is directly relevant to Plaintiffs' damages. Those documents will show the value to Defendants of using Plaintiffs' images, notably

5

from the differences between revenues when Defendants were using Plaintiffs' images and when the images were not used.

Second, Defendants must be compelled to produce all documents concerning revenues generated by all websites, including those that did not use Plaintiffs' images. Such documents are also directly relevant to Plaintiffs' damages. The pervasive nature of Defendants' use of Plaintiffs' images on Defendants' websites shows that the revenue generated by those websites was attributable to Plaintiffs' images.

Evidence of Defendants' profits and revenue are specifically provided for in the damages provisions of California Civil Code Section 3344: "In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, **the injured party or parties are required to present proof only of the gross revenue attributable to such use**, and the person who violated this section is required to prove his or her deductible expenses." Cal. Civ. Code § 3344(a) (emphasis added).

"[O]ne of the primary purposes of advertising is to motivate a decision to purchase a particular product or service . . . The first step toward selling a product or service is to attract the consumers' attention." *Eastwood v. Sup. Ct.*, 149 Cal.App. 409, 420 (1983); *see also* McCarthy, J. Thomas, The Rights of Publicity and Privacy, Vol. 1, 4:17 (West 2010) ("The courts use the commonsense rule that if a defendant uses plaintiff's personal identity for commercial purposes, then it will be presumed that plaintiff's identity had commercial value"; "If defendant uses a relatively unknown person's identity to promote its sales, it follows that defendant thought the identity had commercial value.").

   Here, Plaintiffs' images were used without consent throughout the vast majority of Defendants' websites, including the entirety of the Bellagio website, to attract consumers to make purchases through the website. As shown in Defendants' interrogatory responses, Plaintiffs' images were used on nearly 20 websites using the Bellagio.com URL and on several websites for Defendants' general MGM website and other hotel and casino properties, including Circus Circus, Delano, Excalibur, Luxor, Mandalay Bay, MGM Grand, Mirage, New York New York, Monte Carlo, Vdara, Beaurivage, and Aria. Hamideh Decl., ¶ 8, Exs. 2 and 3. Further, as shown therein, Plaintiffs' images were used in a number of other methods of marketing and advertising for Defendants, including thousands of "concierge brochures" and an "IPTV" system.  Hamideh Dec., ¶ 8, Ex. 2.

   Further, after this case was filed, images of Plaintiffs were still being used by Defendants to market and advertise the hotels and resorts. For example, images of Plaintiffs Forrest Kolb, Lyne Renee, and Jinyong Na appeared front and center on the "MGM Resorts Vacations" reservations and customer service websites, all of which link directly to each hotel and casino's main website page, in which a user can search for and buy flight and hotel room and flight packages for stays at Defendants' hotels and resorts directly from Los Angeles, California and throughout the rest of the world. Hamideh Decl., ¶ 10, Ex. 4. Some examples included from the websites for Defendants' Aria, Bellagio, Mirage, Vdara, New York New York, Signature at MGM Grand, Mandalay Bay, Excalibur, and Luxor hotels/resorts. Defendants' web pages show bookings generated for purchase of hotel stay and flights. *Id.*

   Accordingly, any and all documents related to revenues received by Defendants through their websites is relevant. Defendants may argue at trial that other factors lead to consumers making purchases through the website, but for discovery purposes Plaintiffs are entitled to the revenue information and documents. Attribution and causation are factual issues to be decided by the jury.

1  Overall, Defendants' objection to producing revenue documents for the
2  requested time period and for the entirety of the Bellagio.com website is without
3  merit. The requested documents are directly relevant to Plaintiffs' claims for
4  damages and are in the sole and exclusive possession of Defendants.
5   B. <u>Defendants' introductory statement</u>
6  Plaintiffs' request for all revenue from Bellagio.com should be denied for
7  two reasons. First, Plaintiffs' document request does not encompass revenue from
8  Bellagio.com. Plaintiffs asked for Bellagio's revenue, not revenue from a specific
9  website, like Bellagio.com.
10  Two, Plaintiffs' request for all revenue from Bellagio.com is clearly
11  overbroad and beyond the scope of discovery. Contrary to Plaintiffs' claims, the
12  images at issue were not used "throughout the vast majority of Defendants'
13  websites, including ***the entirety of the Bellagio website***." *See* Pl.'s Intro. Statement
14  (Emphasis added). Plaintiffs' images appeared on only 18 webpages, and none of
15  them can be considered "point of sale" pages (like a webpage advertising or selling
16  hotel rooms), but rather informational webpages like concierge contact information,
17  lists of past slot machine winners, or information about how to apply for a credit
18  marker. Plaintiffs' arguments about MGMResortsVacations.com are red herrings.
19  Plaintiffs are seeking revenue from Bellagio.com, not MGMResortsVacations.com.
20  *See* Ex. 1 to Hamideh Decl.  Plaintiffs' mention of unused concierge brochures has
21  nothing to do with seeking revenue from the website.  Plaintiffs' arguments about
22  "IPTV", an interactive television system inside hotel rooms has no bearing on the
23  website or revenue.
24  Plaintiffs have not articulated any comprehensible or reasonable nexus
25  between revenue from Bellagio.com and the claims in this case. There is no basis
26  for Defendants to extract revenue information for the entire website for eight years
27  based on the use of stock photographs on a small number of webpages.
28  For these reasons, Plaintiffs' Motion to Compel should be denied.

1  **V.     REQUEST FOR PRODUCTION IN DISPUTE AND DEFENDANTS'**
2  **       RESPONSE**

3       A. <u>Plaintiffs' Request for Production No. 24</u>

4       Request No. 24: All DOCUMENTS that REFER or RELATE TO YOUR
5  gross revenues from the time period from two years prior to the date YOU first used
6  Propounding Parties' images to the present.

7       B. <u>Defendants' Response to Request for Production No. 24</u>

8       [Defendant] objects to this request as vague, confusing, incomplete, and
9  misleadingly worded. The phrase "Propounding Parties' images" is not defined and
10 does not indicate what images are being referenced. MGM further objects to this
11 request on the basis that it seeks documents that are neither relevant nor reasonably
12 calculated to lead to the discovery of admissible evidence. Documents before the
13 licenses purportedly expired have no bearing on any claim or defense.

14      Subject to and without waiving any objection, and to the extent [Defendant]
15 understands what is being requested, [Defendant] will produce documents
16 responsive to this request that are located as a result of a reasonably diligent search
17 of a location or locations where such documents would reasonably be likely to be
18 found, if any.

19      C. <u>Plaintiffs' Argument to Compel Further Production</u>

20      As stated above in Plaintiffs' introductory statement, the requested
21 documents are directly relevant and crucial to Plaintiffs' claims for damages.
22 Defendants have been unable to articulate any justified objection to producing these
23 documents, especially considering the broad nature of discovery.

24      Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery
25 regarding any nonprivileged matter that is relevant to any party's claim or defense
26 and proportional to the needs of the case, considering the importance of the issues
27 at stake in the action, the amount in controversy, the parties' relative access to
28 relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

As stated above, Plaintiffs' request is clearly relevant to this case for Plaintiffs' claims for damages. Further, Defendants have continually cited to the relatively nominal license fees paid to Plaintiffs to downplay the scope of this case. However, the truth is that Defendants never informed Plaintiffs of the intent to use Plaintiffs' images on the scale that eventually occurred. Plaintiffs turned out to be the face of Defendants' new campaign on a variety of media. Plaintiffs need to know exactly how much revenue was generated from Defendants' websites to accurately calculate Defendants' profits as well as the license fee Plaintiffs would have demanded after the expiration of the licenses.

Lastly, Defendants' objections based on undue burden have not been substantiated. Defendants failed to provide any declaration or explanation of the burden and expenses it would take to locate and produce documents. The reality is that Defendants simply do not want to try and locate any further documents because they likely follow suit with the documents Plaintiffs do have – showing Defendants' substantial profiting from their intentional violation of Plaintiffs' rights. Accordingly, Defendants' boiler plate objections should be disregarded. *See A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (stating that "general or boilerplate objections such as 'overly burdensome and harassing' are improper-especially when a party fails to submit any evidentiary declarations supporting such objections").

Overall, Defendants are in exclusive possession, custody, and control of documents and information regarding the uses of Plaintiffs' images and all revenue derived therefrom. These documents are crucial to the central issues in this case, and Defendants have not provided any justifiable explanation why they should not be compelled to retrieve and produce the documents.

D. <u>Defendants' Opposition to Compel Further Production</u>

*1. The Discovery Requests Do Not Seek Revenue From Bellagio.com*

Request for Production of Documents ("RFP") 24 does not ask for revenue from Bellagio.com. It asks for Bellagio's "gross revenue from the time period from" 2008 to the present. As written, the request is seeking Bellagio's entire revenue.[3]

In this Motion to Compel, however, Plaintiffs are asking for something different – revenue from Bellagio.com. Plaintiffs' request for revenue from Bellagio.com is really just an attempt to rewrite their discovery requests. *Finkelstein v. Guardian Life Ins. Co. of Am.*, No. C07–1130 CRB (BZ), 2008 WL 2095786, at *2 (N.D. Cal. May 14, 2008) ("While this request includes documents that might be discoverable…I will not rewrite plaintiff's overbroad discovery request"); *Robin Singh Educ. Servs., Inc. v. Excel Test Prep*, No. C–03–5039 JSW(JCS), 2004 WL 2554454, at *1 (N.D. Cal. Nov. 9, 2004) ("Rule 26 does not require the Court to rewrite discovery requests for the parties"); *JJCO, Inc. v. Isuzu Motors Am., Inc.*, No. 08–00419 SOM/LEK, 2009 WL 3569600, at *10 (D. Hawai'i Oct. 30, 2009) ("The Magistrate Judge is not obligated to rewrite a discovery request to narrow it, or to parse an overly broad request. There is no clear error in holding a party to the scope of the discovery request it drafted"); *Bartolome v. City & Cnty. of Honolulu*, No. 06–00176 SOM/LEK, 2008 WL 2736016, at *14 (D. Hawai'i July 14, 2008) ("This court sees no basis for finding clear error if a Magistrate Judge reasonably declines to rewrite a party's discovery request to obtain the optimum result for that party. That is counsel's job"). Plaintiffs could easily remedy this fundamental problem by revising and re-serving a document request for the documents sought (which Bellagio's counsel suggested during the meet and confer).

---

[3] Despite objection, Bellagio produced and identified documents reflecting its revenue. This information is publically available.

Plaintiff's failure to serve an appropriate document request raises basic and unavoidable concerns. Because Plaintiffs did not serve a request that identifies documents with reasonable particularity (Fed. R. Civ. P. 34), it is difficult to even discern what "revenue" Plaintiffs seek. The webpages at issue are informational in nature, there is no revenue specifically tied to them and Defendants are really left to guess as to what Plaintiffs seek. During the meet and confer, Plaintiffs claimed they wanted revenue from "sales of hotel stays, airline tickets, show purchases, etc." *See* Meet and Confer Letter at 24, Ex. 1 to Hamideh Decl. Yet, Plaintiffs' image are not on pages for booking a hotel, ordering flights, or ordering tickets for a show. *See* Website Examples, Ex. 3 to Hamideh Decl.; *see also* Ex. B to McCue Decl.

The Court should deny Plaintiffs' Motion to Compel on this basis alone.

2. *The Discovery Request Is Too Broad*

Even if the Court were inclined to rewrite Plaintiffs' document to seek the revenue generated from the Bellagio.com website, the request is overly broad and beyond the scope of discovery. The documents sought must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b); *see Bryant v. Mattel, Inc.*, Nos. C 04-09049 SGL (RNBx), CV 04-09059, CV 05-2727, 2007 WL 5432959, at *4 (C.D. Cal. Apr. 19, 2007) ("The Federal Rules of Civil Procedure do not permit [the plaintiffs] to use broad discovery requests, untethered to a claim or defense, to fish for new claims."); *In re Ashworth, Inc. Sec. Litig.*, No. 99–CV–121, 2002 WL 33009225, at *5 (S.D. Cal. May 10, 2002) ("[Rule 26] 'signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings.'") (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 Amendments).

Plaintiffs' claim that revenue from Bellagio.com is relevant under California's right of publicity statute is flawed. The statute states that Plaintiffs are entitled to profits "from the unauthorized use that ***are attributable to the use***." Cal. Civ. Code 3344 (emphasis added). "Attributable to the use" requires some

connection between the use and the revenue. In *Del Amo v. Baccash,* a plaintiff sued an online adult video website for displaying photographs of models without the models' permission. *Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 2780978, at *6 (C.D. Cal. July 15, 2008). The plaintiff sought profits that the website generated from display of the photographs. The court rejected the theory because plaintiff "never provided evidence that connected Defendants' display of the infringed photographs, among many other photographs displayed, to Defendants' membership fees profits." *Id*. The court held that the plaintiff cannot "merely toss up an undifferentiated gross revenue number." *Id.* (internal citations omitted).[4]

The substantive law on recovery of profits under right of publicity defines the scope of discovery here. Fed. R. Civ. P. 26 (scope of discovery is defined as "relevant to any party's claim or defense and proportional to the needs of the case"); *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (reversing district court for allowing discovery that have no bearing on the merits of the case). As another court observed, "While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997) (citation and internal quotations omitted); *see also Gagne v. Reddy*, 104 F.R.D. 454, 457 (D. Mass. 1984) (denying motion to compel because party did not explain "how the information requested would be relevant to the issues involved in this lawsuit").

Here, Plaintiffs' are seeking revenue from the Bellagio.com website as a

---

[4] The court applied the same reasoning to the right of publicity claim. *Del Amo*, 2008 WL 2780978, at *10 ("as with Del Amo's copyright infringement claims, Del Amo has not established that Defendants' profits are "attributable" to the Defendants' violation of Section 3344").

whole, when the use of the Plaintiffs' images is limited to only 18 webpages. None of the 18 webpages at issue are at the home page or landing page – *i.e.* the page that consumers would see if they visited the Bellagio.com website – and none of them actually identify specific revenue streams.

Finally, the time frame of Plaintiffs' request is too broad. The only profits potentially recoverable are for the period of time of the "unauthorized use." Cal. Civ. Code § 3344. Plaintiffs' Second Amended Complaint alleges that Defendants' had the right to use the images up until December 2014. SAC ¶ 11, Ex. A to McCue Decl. All of the images were removed before January 2016.[5] The relevant time period is December 2014 to December 2016. Yet, Plaintiffs seek discovery regarding revenue from 2008 to the present. There is no valid reason why Plaintiffs would be entitled to revenue or profits information for eight years when their own pleading only asserts unauthorized use for one year.

Plaintiffs' argument that comparing Bellagio's revenue before and after Bellagio started the alleged use will show how Plaintiffs' images affected Bellagio's revenue ignores a critical fact. As Plaintiffs plead, Bellagio began use of the images in 2009, **but it had the right to do so for five years**. SAC ¶ 11, Ex. A to McCue Decl. Comparing revenue change from 2009 to 2010, even assuming Plaintiffs can show that the increase was due to use of a few stock images, would have no bearing on calculating Plaintiffs' alleged damages because Plaintiffs concede that they are not entitled to any profits from 2009 to 2014.

The Court should deny the Motion to Compel.[6]

DATED: June 9, 2016                    **THE HAMIDEH FIRM, P.C.**

---

[5] Defendants would have removed the images sooner but Plaintiffs refused to identify the locations where they believe the images appeared that Defendants may have missed, delaying the quick removal of the images to mitigate damages. (*See* Dkt. No. 24 at 123.)

[6] As a final note, Plaintiffs attached to their portion of the stipulation webpages at mgmresortsvacations.com. *See* Ex. 4 to Hamideh Decl. As this motion to compel is dealing with Bellagio.com, those are irrelevant.

By  /s/ Bassil A. Hamideh
Bassil A. Hamideh
Attorneys for all Plaintiffs

DATED: June 16, 2016

**LEWIS ROCA ROTHGERBER CHRISTIE**

By  /s/ Michael J. McCue
Michael J. McCue
Attorneys for Defendants